**Clara Mae BRADLEY et al.,**
**Appellants,**

**v.**

**HOUSING AUTHORITY OF KANSAS CITY, MISSOURI, et al., Appellees.**

Nos. 74–1464, 74–1491.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 12, 1974.

Decided March 19, 1975.

J. D. Riffel, Legal Aid and Defender Society, Kansas City, Mo., for appellants.

Lloyd C. Loomis, Kansas City, Mo., for appellees.

Before LAY and ROSS, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

PER CURIAM.

In December 1972, four public housing applicants filed this suit, pleaded as a class action, for declaratory and injunctive relief against the Housing Authority of Kansas City (HAKC) and the Department of Housing and Urban Development (HUD). The complaint charged that HAKC, under HUD's directive, followed tenant selection policies which gave preference to higher-income applicants. These policies were alleged to violate the Housing Act of 1937, 42 U.S.C. § 1401 et seq., as well as the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The district court without ruling on the motion to certify the suit as a class action under Rule 23(c)(1) dismissed the case as moot after HAKC gave apartments to the named plaintiffs. Hamilton v. Housing Authority, Civ. No. 20742–3 (W.D.Mo., March 20, 1974). Costs of $540 were taxed to defendants. Both sides appealed. We affirm.

The facts are basically undisputed. Defendant HAKC owns and manages ten public housing developments in Kansas City, Missouri. Much of its funding comes from defendant HUD. In 1971, HUD directed local housing authorities to establish a specific rental rate for each apartment and to endeavor to find tenants able to pay the full established rent. Thereafter, Congress enacted the Brooke Amendment,[1] which barred local housing authorities from charging as rent more than one-fourth of a tenant's income. Thus, the higher the tenant's income, the higher the rent the local housing authority could legally charge.

HAKC put these rules into effect in 1972. It rejected all otherwise eligible applicants if their income was too low to pay the full established rent. HAKC apartments were simply left vacant to await higher-income tenants. In addition, HAKC denied all applications from persons receiving Aid to Families with Dependent Children (AFDC). The named plaintiffs had all applied for HAKC housing and had been rejected or indefinitely delayed solely on the grounds that their income was too low or was derived from AFDC. In the suit filed they sought to represent other eligible applicants who had been refused housing on the same grounds.

In March 1973, when defendants filed their answer in this litigation, HAKC voluntarily changed some of the challenged policies. First, the absolute preference for higher-income tenants was dropped as to seven of the ten HAKC housing developments. Second, the rule denying applications from AFDC recipients was abandoned.

Third, and most important here, HAKC notified all named plaintiffs that they would immediately be placed in apartments, and this was done. Subsequently, as soon as additional applicants sought to intervene as plaintiffs, HAKC gave them apartments as well. It is not denied that admission of these persons "occurred not in the normal course of admission by the Housing Authority but solely because they had filed their action in the United States District Court."

The district court dismissed the case as moot without considering certification of the class.[2] The court held that

---

* Talbot Smith, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. Pub.L. 91–152, § 213(a), 83 Stat. 389, amending 42 U.S.C. § 1402(1).

2. Although not determinative here, we find that it is incumbent upon the district court under Fed.R.Civ.P. 23(c)(1) to rule "as soon as practicable after the commencement" of the suit. This was not done here. Twice during the pendency of the litigation, on March 12 and August 1, 1973, plaintiffs moved for certification of the class under Fed. R.Civ.P. 23, and all discovery relative to the class was completed on July 15, 1973. On March 12, 1973, plaintiffs had moved for a preliminary injunction as well. The district court never ruled on these motions, but instead dismissed the case as moot.

the grant of apartments to the named plaintiffs mooted their individual claims.

After the appeal was docketed in this court, Congress amended the Housing Act of 1937 to provide, *inter alia,* that local housing authorities may not let apartments stand vacant to await higher-income tenants if eligible low-income tenants are available. Tit. II, § 6(c)(4)(A) Housing and Community Development Act, Pub.L. No. 93–383 (August 22, 1974). In view of the amendment defendants now assert on appeal that regardless of the propriety of the dismissal below, the subsequent statutory amendments moot the merits of the issue as to all possible plaintiffs. *Cf.* Housing Authority of Louisville v. Fletcher, 419 U.S. 812, 95 S.Ct. 27, 42 L.Ed.2d 39 (1974).[3]

The plaintiff-appellants deny that the case is moot at least as to proposed class members. They allege that those persons suffer a continuing injury from the defendants' now illegal past practices. It is urged that class members do not have either the apartments or the priority they should have on the waiting list due to HAKC's actions under the old statute. At oral argument counsel for defendants stated that he was unaware of any HAKC plans to put all applicants into the places they otherwise would have had. In addition, plaintiffs urge that the case is not moot as to the proposed class even under the new Housing Act Amendment since the defendants continue to grant various preferences to higher-income tenants.

In light of the Supreme Court's recent decisions in Board of School Comm'rs v. Jacobs, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975), and Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), we hold that the district court did not err in dismissing this action as moot. *Jacobs* and *Sosna* indicate that dismissal is required by the case or controversy provisions of Article III when the claims of all the named plaintiffs become moot before certification of the class under Fed.R.Civ.P. 23(c)(1). In view of our disposition of the appeal on this basis, we do not reach the question of the effect of the 1974 amendments to the Housing Acts of 1937 on any similar suit that might be filed by other members of the proposed class. In *Sosna,* the Court noted that mootness of the named plaintiff's claim before certification of the class might not always require dismissal. The Court said:

> There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the District Court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to "relate back" to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review.

95 S.Ct. at 559.

Nevertheless, in *Jacobs* the Court thereafter found that an abortive determination of the class under Rule 23(c)(1) did not serve to avoid mootness where no formal certification actually took place.

---

**3.** *Fletcher* contained a nearly identical class action challenge to admission policies of the Louisville, Kentucky, Housing Authority. The district court had upheld a similar economic mix policy, but the Court of Appeals reversed on the ground that that policy conflicted with the applicable (pre-amendment) statute. 491 F.2d 793 (6th Cir. 1974). The amendments were enacted before the Supreme Court passed on the petition for certiorari. On October 15, 1974, the Court granted certiorari, vacated the judgment of the Sixth Circuit, and remanded the case "for further consideration in light of" the amended statute. 95 S.Ct. at 27. Defendants urge that this shows that the Supreme Court considers the statute to have mooted this question. *Fletcher* does no more than raise the mootness problem; it does not settle it. In *Fletcher* the Court merely remanded for further consideration apparently of possible mootness, but it did not itself decide whether or not the case was moot. No oral argument was held and the parties had no opportunity to present their views on mootness to the Supreme Court.

In the instant case it is true that the district court failed to take action on the plaintiffs' motions relating to the certification of the class. In addition it is conceded that the defendants deliberately mooted the issue as to the named plaintiffs or intervenors to avoid judicial review. Both of these factors militate against a finding of mootness since the issue as to the class continued to evade review. *See* Weathers v. Peters Realty Corp., 499 F.2d 1197 (6th Cir. 1974); Smith v. YMCA, 462 F.2d 634 (5th Cir. 1972); Note, The Mootness Doctrine in the Supreme Court, 88 Harv.L.Rev. 373, 389 n. 83 (1974).

Notwithstanding these considerations, plaintiffs concede that if the case were remanded, substantial amendments to the complaint would have to be made relating to the alleged interests of the class under both the 1974 amendments and the former Act and regulations. Theoretically new parties would intervene. Under these circumstances, particularly in view of the absence of certification of the class, we think it serves the interests of all concerned that the remaining class begin anew and thus avoid the legal entanglements of mootness under *Sosna* and *Jacobs.* We are aware that substantial discovery had been completed in order to determine the class, but due to the statutory amendment, it is conceded that the class must be newly defined. Additionally, there no longer exists "the reality of the claim that otherwise the issue would evade review," under the former statute since the alleged defect of the old law has been obviated. True, the question of priority of the prior class still remains but this will either be resolved by the defendants' compliance or continue to be ripe for adjudication. We are additionally confident that in a new action the district court will follow the requirement of Rule 23(c)(1) and determine the class as soon as practicable after the commencement of the suit.

We dismiss the cross-appeal of defendants as to the allowance of costs. The district court has broad discretion in awarding costs under Fed.R.Civ.P. 54(d). Environmental Defense Fund v. Callaway, 497 F.2d 1340, 1342 (8th Cir. 1974).

Judgment affirmed. Each party is ordered to pay own costs on appeal.